

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Newport News Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO. 4:23-cr-47 |
| v. | ) | |
| | ) | 18 U.S.C. §§ 1343 and 2 |
| NELLY OGECHI IDOWU, | ) | Wire Fraud |
| | ) | (Counts 1–2) |
| Defendant. | ) | |
| | ) | 18 U.S.C. §§ 1014 and 2 |
| | ) | False Statements |
| | ) | (Count 3) |
| | ) | |
| | ) | 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. |
| | ) | § 2461(c) |
| | ) | Asset Forfeiture |
| | ) | |

INDICTMENT

June 2023 Term – at Newport News, Virginia

THE GRAND JURY CHARGES THAT:

GENERAL ALLEGATIONS

At all relevant times:

1. NELLY OGECHI IDOWU, the defendant herein (hereinafter "IDOWU"), resided in Hampton, Virginia, in the Eastern District of Virginia.

2. IDOWU was an Airman First Class (E-3) in the United States Air Force, serving at Langley Air Force Base ("LAFB") in Hampton.

3. Fountainhead SBF, LLC ("Fountainhead") is a commercial lender and a mortgage lending business (as defined under 18 U.S.C. § 27), based in Lake Mary, Florida, whose activities affect interstate commerce.

4. Capital Plus Financial, LLC ("Capital Plus") is a community development financial institution (CDFI) based in Bedford, Texas.

5. U.S. Bank National Association ("U.S. Bank") is a financial institution (as defined under 18 U.S.C. § 1956) headquartered in Minneapolis, Minnesota, which operates in and the activities of which affect interstate commerce.

6. The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government, based in Washington, D.C., that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enables and provides for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

7. In March 2020, the United States was in the midst of the coronavirus ("COVID-19") pandemic, which resulted in the shutdown of numerous businesses and caused millions of American workers to be out of work. On March 12, 2020, the President declared a national emergency under Section 501 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121 et seq. ("Stafford Act"). As of April 18, 2020, the President had declared that a major disaster exists in all States and territories under Section 401 of the Stafford Act.

8. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was signed into law on March 27, 2020, which established several new temporary programs and provided for the expansion of others to address the COVID-19 pandemic.

9. One of these new programs was the authorization of up to $349 billion in United States taxpayer funds in forgivable loans to small businesses, through a program referred to as the Paycheck Protection Program ("PPP"). In or about April 2020, Congress authorized over $300 billion in United States taxpayer funds in additional PPP funding.

10. PPP loans were designed to provide a direct incentive for small businesses to keep their workers on the payroll. Under this program, the SBA will forgive all or part of loans if all employees were kept on the payroll for eight weeks and borrowers submit documentation confirming that the loan proceeds were used for payroll, rent, mortgage interest, or utilities.

11. In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the small business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the applicant was required to state, among other things, its gross income amount, which was used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, the applicant was required to provide documentation showing its payroll expenses. Permissible forms of documentation included federal tax filings.

12. PPP applications were processed, in the first instance, by a participating, SBA-approved lender. They were then transmitted, for further review, to the SBA to assess the applicant's eligibility. If a PPP loan application was approved, the participating lender would fund the PPP loan using its own monies.

13. PPP loan proceeds were required to be used by the business on specific permissible expenses: payroll costs; interest on mortgages; rent; and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these permissible expenses within a designated period of time (usually eight weeks of receiving the proceeds).

14. The applicant for a PPP loan was required to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects." The applicant was also required to certify that he or she

"underst[ood] that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law," and that, "if the funds are knowingly used for unauthorized purposes, the federal government may hold [the applicant] legally liable, such as for charges of fraud."

A.  First PPP Application

15. On or about April 29, 2021, IDOWU electronically applied for a PPP loan through Fountainhead (loan number ending 8905), requesting $20,833.00 in loan proceeds. IDOWU stated in her PPP application that she was an independent contractor under the company name of "Nelly Idowu," based at her home address of ** Eagle Loop, Hampton, Virginia 23665, which is part of the LAFB base housing complex. IDOWU further stated that she opened this business on January 1, 2018, and that the loan proceeds would be used for payroll costs.

16. IDOWU falsely claimed that she had earned $102,350.00 in gross income as an independent contractor in tax year 2020. IDOWU provided her personal social security number ("SSN"), email address, and phone number on the application.

17. Question 5 of the PPP Borrower Application Form asked, "Is the Applicant (if an individual) or any owner of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction?" IDOWU responded "NO" to this question and electronically signed her initials, verifying the accuracy of her response. In fact, however, IDOWU had been indicted on or about August 26, 2020, in the United States District Court for the District of Utah, with one count of Conspiracy to Launder Money, in violation of 18 U.S.C. § 1956(h), and two counts of Money Laundering, in violation of 18 U.S.C. § 1957. IDOWU made her initial appearance on those charges on November 10, 2020. She was still subject to said indictment when she submitted the PPP loan application.

18. IDOWU electronically signed this PPP application on or about April 29, 2021, attesting that the information provided was true and accurate and that she understood the criminal penalties associated with providing false statements to the SBA.

19. On or about May 1, 2021, IDOWU's PPP loan application for $20,833.00 was approved. That same day, IDOWU electronically signed and submitted a promissory note and loan agreement, which she was required to complete in order to receive the PPP loan proceeds.

20. On or about May 7, 2021, IDOWU received a $20,833.00 electronic deposit from Fountainhead for the awarded PPP funding into her personal checking account with U.S. Bank (last four digits 2566). IDOWU has maintained that personal bank account since at least March 5, 2019.

B. Second PPP Application

21. On or about May 12, 2021, IDOWU submitted a second-draw PPP loan application through Capital Plus (loan number ending 9000), requesting another $20,833.00 in loan proceeds for the same business entity. IDOWU again provided her SSN, personal phone number, and email address on the application.

22. IDOWU also falsely claimed on the second application that she had earned $102,350.00 in gross income as an independent contractor during tax year 2020.

23. Question 4 of the PPP Second Draw Borrower Application Form asked, "Is the Applicant (if an individual) or any owner of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction?" IDOWU again responded "NO" to this question and electronically signed her initials, verifying the accuracy of her response. In fact, she was still subject to the pending indictment in Utah.

24. IDOWU electronically signed this second PPP application on or about May 12, 2021, attesting that the information provided was true and accurate and that she understood the criminal penalties associated with providing false statements to the SBA.

25. On or about May 17, 2021, IDOWU's second PPP loan application for $20,833.00 was approved.

26. On or about June 10, 2021, IDOWU electronically signed and submitted a promissory note and loan agreement, which she was required to complete in order to receive the second-draw PPP loan proceeds.

27. On or about June 28, 2021, IDOWU received a $20,833.00 electronic deposit from Capital Plus for the awarded second-draw PPP funding into her personal checking account with U.S. Bank (last four digits 2566).

## SCHEME AND ARTIFICE

28. From in or about at least April 2021, to at least in or about June 2021, in the Eastern District of Virginia and elsewhere, NELLY OGECHI IDOWU, the defendant herein, devised and intended to devise a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, promises, and omissions.

29. It was part of the scheme and artifice that the defendant sought to fraudulently obtain disaster-related benefits in the form of two PPP loans.

30. It was further part of the scheme and artifice that the defendant submitted two applications under the PPP program that contained false statements, misrepresentations, and omissions related to the defendant's income and criminal record.

31. It was further part of the scheme and artifice that the defendant falsely attested on the aforementioned loan applications that the information presented was true and accurate.

32. It was further part of the scheme and artifice that the defendant submitted promissory notes and loan agreements to receive PPP loan proceeds from Fountainhead and Capital Plus.

33. It was further part of the scheme and artifice that the defendant received $41,666.00 in PPP loan proceeds into her personal checking account.

34. It was further a part of the scheme and artifice that the defendant caused the transmission of information by wire between the Eastern District of Virginia and locations outside of the Commonwealth of Virginia.

## COUNTS ONE AND TWO
(Wire Fraud)

THE GRAND JURY CHARGES THAT:

1. The factual allegations contained above are incorporated herein by reference as if set out in full.

2. On or about the dates and in connection with the transactions described below, NELLY OGECHI IDOWU, the defendant herein, aided and abetted by others known and unknown, having devised and intended to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false, fraudulent, and fictitious pretenses, representations, and promises, as described in paragraphs 28 to 34 above and incorporated herein by reference, and, for the purpose of executing the aforesaid scheme and artifice, in the Eastern District of Virginia and elsewhere, did knowingly and willfully transmit and cause to be transmitted by means of wire communication in interstate commerce, the following certain signs, signals, and sounds: to wit, the following PPP promissory note/loan agreement and PPP loan application to/from/through a location within the Eastern District of Virginia to/from/through a location outside of the Commonwealth of Virginia. These violations occurred in relation to, and involved benefits authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency—namely, the COVID-19 pandemic.

| Count | Date (on or about) | Description of Wire Transmission |
|---|---|---|
| 1 | 5/1/2021 | IDOWU electronically submitted a promissory note and PPP loan agreement to Fountainhead for independent contractor "Nelly Idowu" (loan number ending 8905). |
| 2 | 5/12/2021 | IDOWU electronically submitted a second-draw PPP loan application through Capital Plus for independent contractor "Nelly Idowu" (loan number ending 9000). |

(In violation of Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE
### (False Statements)

THE GRAND JURY FURTHER CHARGES THAT:

1. The factual allegations contained above are incorporated herein by reference as if set out in full.

2. On or about the dates and in connection with the loan application set forth below, in the Eastern District of Virginia and elsewhere, NELLY OGECHI IDOWU, the defendant herein, aided and abetted by others known and unknown, knowingly made false statements and reports for the purpose of influencing a mortgage lending business, in connection with an application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, and loan, as follows:

| Count | Date (on or about) | False Statements |
|---|---|---|
| 3 | 4/29/2021 | IDOWU claimed on her application for a PPP loan from Fountainhead that she had earned $102,350.00 in gross income as an independent contractor in tax year 2020 and that she was not subject to a felony indictment in any jurisdiction, when in truth and in fact, as IDOWU well knew, she had earned substantially less than that amount—if anything—working as an independent contractor in tax year 2020, and she was subject to a felony indictment in the U.S. District Court for the District of Utah. |

(In violation of Title 18, United States Code, Sections 1014 and 2.)

## FORFEITURE

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT:

1. The defendant, if convicted of either of the violations alleged in Counts 1 and 2 of this Indictment, shall forfeit to the United States, as part of sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

2. If any property that is subject to forfeiture above is not available, it is the intention of the United States to seek an order forfeiting substitute assets pursuant to Title 21, United States Code, Section 853(p) and Federal Rule of Criminal Procedure 32.2(e.).

(In accordance with Title 18, United States Code, Sections 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).)

UNITED STATES v. NELLY OGECHI IDOWU
4:23-cr-<u>47</u>

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.

A TRUE BILL:

**REDACTED COPY**

_____
FOREPERSON

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____
Alyson C. Yates
Special Assistant United States Attorney
United States Attorney's Office
721 Lakefront Commons, Suite 300
Newport News, Virginia 23606
Phone: (757) 591-4000
Fax: (757) 591-0866
Email: alyson.yates@usdoj.gov